**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

**BARN HILL PRESERVE INC.**

| | |
|---|---|
| **VERSUS** | **CIVIL ACTION** |
| **UNITED STATES OF AMERICA** | **NO. 25-822-JWD-EWD** |

**RULING AND ORDER**

This matter comes before the Court on *The United States of America's Motion to Dismiss Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure* (Doc. 17) ("the *MTD*") filed by Defendant United States of America ("Defendant" or "the Government"). Plaintiff Barn Hill Preserve Inc. ("Plaintiff" or "Barn Hill") opposes the motion. (Doc. 20.) Defendant has filed a reply. (Doc. 21.) Oral argument is not necessary. The Court has carefully considered the law, the facts in the record, and the arguments and submissions of the parties and is prepared to rule. For the following reasons, the *MTD* is granted.

## I. BACKGROUND

Plaintiff houses "more than 50 species of exotic animals" at its wildlife center in Ethel, Louisiana. (Doc. 1 at ¶ 2.) Plaintiff received a license to do so from the United States Department of Agriculture ("USDA"). (*Id.* at ¶ 7.) Pursuant to the Animal Welfare Act ("AWA"), USDA "inspectors routinely conduct unannounced inspections" of Plaintiff's facility. (*Id.* at ¶ 8.) Plaintiff and the inspectors "have had confrontations over the years," particularly regarding the inspectors' reports, alleged nitpicking during inspections, purportedly mandating changes to the facility, and the inspectors' application of the USDA regulations. (*Id.* at ¶ 14.)

Plaintiff particularly takes issue with inspectors Diana Care ("Care" or "Inspector Care") and Cynthia Digesualdo ("Digesualdo" or "Inspector Digesualdo"). (*Id.*) Inspector Care conducted a routine inspection on August 23, 2023. (*Id.* at ¶ 15.) Care and Digesualdo also conducted

inspections on September 6, 11, and 12, 2023. (*Id.*) The inspectors issued reports after each inspection. (*Id.*)

After the September 6, 2023, inspection, Care's report asserted that Plaintiff had failed to follow the attending veterinarian's directions for animal care and specifically stated, "A 2-year-old male giraffe is emaciated." (Doc. 1-5 at 1.) The report listed this issue as noncompliance with 9 C.F.R. § 2.40(a)(2). (*Id.*) After noting specific alleged deficiencies in Brazos's[1] care (Doc. 1-5 at 1), the report instructed Plaintiff to "[c]orrect by September 8, 2023 at 12:00PM Central time by following the [attending veterinarian's] instructions, and by ensuring that the [attending veterinarian] has appropriate authority to ensure the provision of adequate veterinary care and to oversee the adequacy of other aspects of animal care and use." (*Id.* at 2.)

Inspector Care also issued the inspection report after the September 11, 2023, inspection. (Doc. 1-6.) This report again cited Plaintiff for noncompliance with § 2.40(a)(2) and claimed that Plaintiff had failed to follow the attending veterinarian's direction and that Brazos was emaciated. (*Id.* at 1.) The report again instructed Plaintiff, "Correct by following the [attending veterinarian's] instructions, and by ensuring that the [attending veterinarian] has appropriate authority to ensure the provision of adequate veterinary care and to oversee the adequacy of other aspects of animal care and use." (*Id.* at 2.) This report did not include a correction deadline.

After the September 12, 2023, inspection, Inspector Digesualdo issued a report. (Doc. 1-7.) Plaintiff was again cited for noncompliance with § 2.40(a)(2). (*Id.* at 1.) The report claimed that Brazos was "severely emaciated." (*Id.* at 2.) It also asserted that Brazos was in "poor health" because Plaintiff "repeatedly failed to follow his veterinarian's recommendations." (*Id.*) Plaintiff

[1] Brazos is the name of Plaintiff's giraffe. (Doc. 1 at ¶ 1.)

was instructed to correct the issue by "following the attending veterinarian's recommendations exactly." (*Id.*) This instruction had no compliance deadline.

Later that day, Care, Digesualdo, and local police officers conducted a search at Plaintiff's facility and confiscated Brazos. (Doc. 1 at ¶ 16.) After the Government confiscated Brazos, Plaintiff's facility allegedly experienced a decline in visitors and revenue as well as "detrimental local and national media coverage." (*Id.* at ¶¶ 27–29.)

Plaintiff appealed Care and Digesualdo's inspection reports to the USDA. (*Id.* at ¶¶ 17–18 (citing Doc. 1-2, Doc. 1-3).) On March 14, 2024, the USDA removed portions of the appealed reports and issued amended inspection reports. (*Id.* at ¶ 18 (citing Doc. 1-4).)[2] However, while the appeals were pending, the USDA "donated Brazos to an unknown third-party without Barn Hill's consent." (Doc. 1 at ¶ 25.) Despite Plaintiff's requests, the USDA has not provided information regarding Brazos's location. (*Id.*)

On November 14, 2024, Plaintiff submitted a claim under the Federal Tort Claims Act ("FTCA") to the U.S. Office of Personnel Management. (*Id.* at ¶ 26 (citing Doc. 1-9).) Plaintiff "re-submitted its FTCA claim with the USDA" on February 18, 2025. (*Id.* (citing Doc. 1-10).) The USDA did not issue a final determination regarding this claim. (*Id.*) Plaintiff then filed this lawsuit on September 12, 2025, seeking a money judgment for its FTCA claims. (*Id.* at ¶ 1.) Plaintiff asserts the following causes of action against the Government: negligence (*id.* at ¶¶ 31–37), gross negligence (*id.* at ¶¶ 38–41), and conversion (*id.* at ¶¶ 42–45).

## II. PARTIES' ARGUMENTS

### A. Defendant's *MTD* (Doc. 17)

[2] The above-cited portions of the reports from September 6 and September 11 were not removed from the amended reports. (Doc. 1-5; Doc. 1-6.) However, the referenced portions of the September 12 report were removed from the amended report. (Doc. 1-7.)

Defendant asserts three reasons why the Court should dismiss Plaintiff's claims: (1) "the FTCA's waiver of sovereign immunity exempts any claim that falls under the FTCA's discretionary function exception" at 28 U.S.C. § 2680(a); (2) Plaintiff's claims about the reports are defamation claims barred by 28 U.S.C. § 2680(h); and (3) "Congress has not waived sovereign immunity under the FTCA" for takings claims. (Doc. 17-1 at 4.) "Plaintiff bears the burden of showing Congress's unequivocal waiver of sovereign immunity." (*Id.* at 5 (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).) The Court "lacks subject matter jurisdiction over the allegations in Plaintiff's Complaint" because "the United States has not waived its sovereign immunity." (*Id.*)

***1. Discretionary Function Exception***

Plaintiff has not alleged "a claim that is facially outside of the discretionary function exception." (*Id.* at 6 (quoting *St. Tammany Par. ex rel. Davis v. Federal Emergency Mgmt. Agency*, 556 F.3d 307, 315 n.3 (5th Cir. 2009)).) Plaintiff's negligence, gross negligence, conversion, and unconstitutional search and seizure claims "fall within the discretionary function exception and are thus barred under the FTCA." (*Id.*)

A two-part test is utilized to determine whether the discretionary function exception applies. (*Id.* (citing *Berkovitz v. United States*, 486 U.S. 531, 536–37 (1988)).) First, the government employee's acts or omissions must involve "an element of judgment or choice." (*Id.* (quoting *Berkovitz*, 486 U.S. at 536).) A plaintiff must allege a violation of a specific, mandatory directive. (*Id.* at 7 (citing *Spotts v. U.S.*, 613 F.3d 559, 567 (5th Cir. 2010)).) Here, Plaintiff cannot point to a mandatory directive that the USDA's Animal and Plant Health Inspection Service ("APHIS") violated when its inspectors decided (1) "whether to inspect Plaintiff's facility;" (2)

"whether circumstances warranted finding inspection citations at Plaintiff's facility;" and (3) "whether to confiscate Plaintiff's giraffe." (*Id.*)

Congress "explicitly" provided discretion for these activities by directing "the Secretary [of Agriculture] to undertake these activities as 'he deems necessary.'" (*Id.* (quoting 7 U.S.C. § 2146).) Congress also directed the Secretary to promulgate rules and regulations "to permit inspectors to confiscate or destroy in a humane manner any animal found to be suffering" due to a failure to comply with the AWA or applicable regulations and standards. (*Id.* (quoting 7 U.S.C. § 2146).) This language indicates that inspection and investigation decisions regarding noncompliance with the AWA are discretionary in nature. (*Id.* at 7–8 (citing *Lorsch v. United States*, No. 14-2202, 2015 WL 6673464, at *6 (C.D. Cal. Oct. 29, 2015)).) The AWA also "provides the Secretary with broad authority to promulgate humane standards of care for covered animals." (*Id.* at 8 (citing 7 U.S.C. § 2143).) Thus, inspectors must use their professional judgment during an inspection to decide whether to take action. (*Id.*)

These AWA provisions are not mandatory rules, but they instead "allow APHIS to exercise its judgment" to determine (1) when an inspection is necessary; (2) whether Plaintiff met the required standards for its giraffe; and (3) whether the animal was "suffering" due to Plaintiff's failure to meet standards and thus, warranted confiscation. (*Id.* (citing *Anderson v. United States*, No. 12-398, 2013 WL 3214966, at *3 (M.D. La. June 21, 2013), *aff'd*, 562 F. App'x 227 (5th Cir. 2014)).) Accordingly, the decisions in this case were discretionary. (*Id.* at 9.)

Plaintiff's reliance on the USDA's Animal Welfare Inspection Guide (the "Guide") as a mandatory directive is misplaced. (*Id.* (citing Doc. 1 at ¶¶ 10–11).) The Guide does not contain mandatory directives and "explicitly states" it should be used as an aid and a reference document. (*Id.* (quoting Doc. 17-2).) The Guide does not specifically prescribe "a course of action for an

employee to follow" and "cannot be used to defeat the removal of Plaintiff's claims from the discretionary function exception." (*Id.* at 10 (quoting *United States v. Gaubert*, 499 U.S. 315, 322 (1991)).) Accordingly, APHIS's decisions in this case were discretionary, and Plaintiff fails to overcome the first *Berkovitz* prong. (*Id.*)

As for the second prong, "the discretionary choice must involve the type of judgment that the exception is designed to shield, namely government decisions and actions based on 'social, economic, and political policy.'" (*Id.* at 6 (quoting *Berkovitz*, 486 U.S. at 536–37).) "[T]here is a strong presumption that APHIS's decision-making" was "grounded in policy and susceptible to policy analysis." (*Id.* at 10.) The policy behind the AWA was to ensure that covered animals are treated humanely and to protect their owners from theft. (*Id.* at 10–11 (citing 7 U.S.C. § 2131).) APHIS's decisions in this case were made "in furtherance of AWA's policy" and thus, "must be presumed" to be grounded in policy. (*Id.* at 11 (quoting *Gaubert*, 499 U.S. at 324–25).) To overcome this presumption, Plaintiff must "allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime." (*Id.* (quoting *Gaubert*, 499 U.S. at 324–25).)

The discretionary decisions in this case were "quintessential governmental policy decisions that are 'susceptible to policy analysis.'" (*Id.*) Confiscating the giraffe, for example, "was susceptible to the policy considerations of furthering AWA's animal protection policies;" determining whether the conditions supported a finding of suffering; "and whether the confiscation could be done efficiently and effectively with limited APHIS financial and human resources available." (*Id.*) Plaintiff's FTCA claims, therefore, are barred by the discretionary function exception. (*Id.* at 12 (citing 28 U.S.C. § 2680(a)).)

***2. Defamation Claims***

28 U.S.C. § 2680(h) provides exceptions to the FTCA's waiver of sovereign immunity. (*Id.*) These exceptions "specifically apply to claims for libel, slander and misrepresentation." (*Id.*) Courts have also interpreted the exceptions as applying to defamation. (*Id.* (citing *Johnson v. Sawyer*, 47 F.3d 716, 732 (5th Cir. 1995); *Williams v. United States*, 71 F.3d 502, 507 (5th Cir. 1995)).) "To the extent Plaintiff seeks to repackage defamation-type allegations in an effort to circumvent the FTCA's intentional-tort exception, such artful pleading cannot confer jurisdiction where it does not otherwise exist." (*Id.*) The Court should evaluate the claim based on its substance, not its nominal designation. (*Id.* (citing *Smith v. United States*, No. 95-1950, 1995 WL 599049 (E.D. La. Oct. 6, 1995)).) Plaintiff alleges that the inspectors' reports had baseless violations, which led to the giraffe's confiscation and harm to Plaintiff's reputation and business. (*Id.* at 13 (citing Doc. 1 at ¶¶ 14, 15, 18, 29, 33).) Plaintiff, therefore, presents a defamation claim, which is barred by 28 U.S.C. § 2680(h). (*Id.*)

***3. Takings Claims***

"To the extent a takings claim is made, Congress has not waived sovereign immunity under the FTCA for such claims." (*Id.*) Plaintiff's claim for damages for the "unconstitutional taking of its giraffe" without compensation should be dismissed under the FTCA. (*Id.* (quoting Doc. 1 at ¶¶ 1, 13).) District courts have jurisdiction over claims against the United States that are founded upon the Constitution "so long as the claim for damages does not exceed $10,000." (*Id.* at 13–14 (referencing 28 U.S.C. § 1346(a)(2)).) Because Plaintiff's claim "exceeds $10,000, jurisdiction for the takings claim lies exclusively with the United States Court of Federal Claims." (*Id.* at 14 (relying on 28 U.S.C. § 1491(a)(1); citing *Refaei v. McHugh*, 624 F. A'ppx 142, 148 (5th Cir. 2015); *E. Enters. v. Apfel*, 524 U.S. 498, 520 (1998)).) Any takings claim "should be dismissed under the FTCA." (*Id.*)

### B. Plaintiff's *Opposition* (Doc. 20)

Plaintiff counters that the Guide "is but one document setting forth the rules and regulations pertaining to the confiscation of animals," and the AWA and the Animal Welfare Regulations ("AWR") "clearly mandate that APHIS agents must follow certain steps before they are authorized to confiscate an animal." (Doc. 20 at 8.) To the extent the Guide refers to the AWR as authority for the inspectors' actions, the Guide "is just as binding as the federal regulation." (*Id.* at 10.) Defendant is bound to comply with the AWA, the AWR, and the Guide. (*Id.*)

Specifically, the AWR provides that APHIS officials "**shall make** a reasonable effort" to notify the facility of the animal's condition and "**request that the condition be corrected** and that adequate care be given to alleviate the animal's suffering or distress" or that the animal be euthanized. (*Id.* at 8 (emphasis in original) (quoting 9 C.F.R. § 2.129(a)).) In the event of noncompliance with this request, "the APHIS official **may confiscate**" the animal if, in the Administrator's opinion, "the circumstances indicate the animal's health is in danger." (*Id.* at 8–9 (emphasis in original) (quoting 9 C.F.R. § 2.129(a)).) Thus, APHIS officials "must do the following" to confiscate an animal: (1) attempt to notify the facility about the animal's condition and request that the condition be corrected; and (2) determine that the facility refused to comply with the request. (*Id.* at 9.) Only then may the official confiscate the animal. (*Id.*) Because Defendant violated "procedures, regulations, and policy," the Court must determine whether the discretionary function exception applies. (*Id.* at 10–11.)

#### *1. Discretionary Function Exception*

Inspectors Care and Digesualdo had authority to confiscate Brazos only if Plaintiff refused to comply with the report's request that the specific conditions be corrected. (*Id.* at 12.) "That did not occur, and thus, agents had no discretion to confiscate Brazos." (*Id.*) The September 12 report

provided three days for Plaintiff to take corrective action for noncompliance with § 2.40(a)(1) but gave no deadline for the noncompliance issues under § 2.40(a)(2) and § 2.131(a). (*Id.* at 9.)

On the same day as the report's submission, Brazos was confiscated. (*Id.* at 13.) Plaintiff did not refuse to comply with the report; it was denied any opportunity to comply prior to Brazos's confiscation. (*Id.*) Additionally, all the violations were removed in the amended report, so "no violations existed at the time." (*Id.*) Accordingly, Inspector Digesualdo had no discretion to confiscate Brazos "when no violation existed." (*Id.*) "The Government failed to follow its procedure on how to properly confiscate an animal." (*Id.*) Therefore, the first prong of the discretionary function exception is not satisfied because the AWA, the AWR, and the Guide "mandate a specific course of action." (*Id.* at 14.)

Even if the Government satisfies the first prong, the second prong is not satisfied because the Government's conduct is not susceptible to policy analysis. (*Id.*) "Plaintiff recognizes that the AWA and the AWR allow the Government to confiscate animals under certain circumstances and that such a decision is grounded in policy considerations." (*Id.*) As previously discussed, those conditions were not met, so the Government was acting outside the bounds of the AWR. (*Id.* at 15.) Removing Brazos before Plaintiff refused to comply with the Government's conditions is contrary to 9 C.F.R. § 2.129(a) and did not "further or support the Government's goal concerning animal safety." (*Id.*) The decision to confiscate Brazos "was neither grounded in policy nor susceptible to policy analysis where mandatory steps were not followed." (*Id.* at 16.) The inspectors' decision to forego the mandatory steps did not further policy goals, and it breached the duty of care owed to Plaintiff. (*Id.*)

***2. Defamation Claims***

"The Government recasts Plaintiff's claims as injury from 'baseless violations' in inspection reports, invoking the defamation exception under 28 U.S.C. § 2680(h)." (*Id.*) Plaintiff's claims, however, mainly arise from violations of the AWA, the AWR, and the Guide. (*Id.*) The reported violations, which were later vacated, resulted from the inspectors' negligence. (*Id.*) The *Complaint* details the confiscation and transfer of Brazos, the failure to follow mandates and procedures, and the resulting property and business loss. (*Id.*) The amended reports "corroborate both the lack of lawful basis for [the Government's] conduct and the negligence of its agents; it does not transform the gravamen into libel or slander." (*Id.*) Plaintiff has not brought a defamation claim against the Government. (*Id.* at 16–17.) And § 2680(h) does not bar FTCA claims premised on property invasion and conversion. (*Id.*)

***3. Takings Claims***

Rather than a taking, the *Complaint* "pleads FTCA claims for negligence, gross negligence, and conversion," which caused property and economic damages. (*Id.* at 17.) These tort claims are within this Court's jurisdiction under 28 U.S.C. § 1346(b)(1) and are not subject to the limitation the Government asserts for takings claims. (*Id.*)

**C. Defendant's *Reply* (Doc. 21)**

***1. Discretionary Function Exception***

Plaintiff failed to show its claims are not barred by the discretionary function exception. (Doc. 21 at 4.) At the motion to dismiss stage, Plaintiff "must invoke the court's jurisdiction by alleging a claim that is facially outside of the discretionary function exception." (*Id.* (quoting *St. Tammany Par.*, 556 F.3d at 315 n.3).) Plaintiff argues that pursuant to 9 C.F.R. § 2.129(a), the Government acted beyond the scope of its discretion when it confiscated Brazos without affording

Plaintiff an opportunity to remedy the issues noted in the inspection report. (*Id.* at 4–5 (citing Doc. 20 at 12–13).)

The Government has discretion under § 2.129(a) to determine whether Plaintiff refused to comply with the requests to cure and correct conditions. (*Id.* at 5 (citing *Spotts*, 613 F.3d at 567).) APHIS's inspection reports and the Notice of Intent to Confiscate Animals document an ongoing pattern of Plaintiff's noncompliance regarding Brazos's "severe emaciation" and "the corrective action required to remedy the noncompliance under § 2.40(a)(2) and the animal's poor health." (*Id.*) Based on this ongoing pattern of noncompliance, the Government determined on September 12, 2023, that under § 2.129(a), "Plaintiff showed a clear and consistent unwillingness to comply" with the Government's repeated requests to take corrective action. (*Id.* at 5–6.) By the date of confiscation, it had been nearly three weeks since the Government identified Brazos as extremely thin. (*Id.* at 6.) The Government, therefore, confiscated Brazos under § 2.129(a) because of Plaintiff's refusal to comply and the circumstances indicating Brazos's health was in danger. (*Id.*)

"The corrective action set forth in the September 12 report was not provided to give Plaintiff yet another occasion to correct the noncompliance with § 2.40(a)(2) before the emaciated giraffe was confiscated." (*Id.*) Instead, the corrective action listed in the report "merely reflects a description of what Plaintiff should generally do to meet the requirements of § 2.40(a)(2) and correct the noncompliance." (*Id.* (citing Doc. 20-1 at § 2.40(a)(2)).) Plaintiff's argument otherwise would mean the Government had to ignore the immediate danger to Brazos and Plaintiff's pattern of refusing to comply. (*Id.* at 6–7.) Such a scenario "ignores the entire purpose of § 2.129(a), which is to confiscate the animal when 'the circumstances indicate the animal's health is in danger.'" (*Id.* at 7 (quoting 9 C.F.R. § 2.129(a)).) The September 12 report "provides the basis for the confiscation by documenting the unresolved noncompliance leading to the giraffe's suffering."

(*Id.*) If issuing the September 12 report meant the Government had to give Plaintiff "yet another chance to implement corrective action," Brazos "may be dead, rendering § 2.129(a) pointless." (*Id.*)

Plaintiff's argument about the lack of an opportunity to cure noncompliance with § 2.40(a)(1) and § 2.131(a) are irrelevant because Brazos was confiscated due to "suffering" and noncompliance with § 2.40(a)(2). (*Id.*) Additionally, the amendments to the inspection reports are immaterial because the Government decided to confiscate Brazos solely based on "the conditions and information observed during the August 2023 and September 2023 inspections." (*Id.* at n.4.)

Despite Plaintiff's contention otherwise, chapter 8.4 of the Guide does not contain mandatory directives that bind the inspectors. (*Id.* at 7.) Even if the Guide impacts the inspectors' discretion, the Government complied with § 8.4.1. (*Id.* at 8.) That section provides that an inspector who "recognizes animal suffering" should provide an inspection report that (1) "identifies 'the non-compliances or conditions causing suffering;'" (2) "provides 'steps that must be taken to correct the problem and alleviate the suffering'"; and (3) "provides '[t]he time period in which the condition must be corrected so the animal is given relief and adequate care.'" (*Id.* (quoting Doc. 17-2 at 283 § 8.4.1).) The time for correction "must be as soon as possible" after the determination of suffering, "but typically no more than 24 hours." (*Id.* (quoting Doc. 17-2 at 283 § 8.4.1).) The Government met these steps: the September 6 report stated Brazos was emaciated, set forth the ways Plaintiff failed to satisfy § 2.40(a)(2)'s requirements, and required Plaintiff to correct the issues by September 8, 2023, at noon. (*Id.* (citing Doc. 1-5).) Brazos was still emaciated during inspections on September 11 and 12, and Plaintiff had yet to take corrective action. (*Id.* (citing Doc. 1-6).) Thus, Brazos was confiscated. (*Id.*) Plaintiff, therefore, has not disproven the first prong of the discretionary function exception. (*Id.*)

As for the second prong, the *MTD* explains that the decision to confiscate "was done in furtherance of the AWA's policy," so "it must be presumed that these acts were grounded in policy when the discretion to make these decisions was exercised." (*Id.* at 9 (citing Doc. 17-1 at 10–11).) Plaintiff's *Opposition* does not respond directly to "the presumption that APHIS' confiscation decision was grounded in policy" or "the specific policy considerations set forth" in the *MTD*. (*Id.*) Plaintiff instead argues the Government's conduct "is not susceptible to policy analysis because APHIS did not comply with 9 C.F.R. § 2.129(a) or the Guide." (*Id.* (citing Doc. 20 at 14–16).) As previously discussed, the Government acted within its discretion under § 2.129(a) and adhered to the Guide. (*Id.*) The September inspection reports, when viewed together, show Plaintiff was on notice of "serious deficiencies" affecting Brazos's health and welfare, and Plaintiff "failed to timely or fully implement veterinary instructions." (*Id.* (citing Doc. 1-5; Doc. 1-6; Doc. 20-1).) Thus, the Government's decision to confiscate Brazos was presumptively grounded in policy and susceptible to policy analysis. (*Id.* at 9–10.)

#### 2. *Defamation and Takings Claims*

Defendant again insists that "evaluating Plaintiff's claims based on its underlying substantive character rather than its nominal designation lends itself to claims sounding in defamation and under the takings clause." (*Id.* at 10.) Thus, "the Court should look past Plaintiff's artful pleading." (*Id.*) Even if Plaintiff argues the Government is mischaracterizing Plaintiff's claims, "those claims still fail under the discretionary function exception." (*Id.*)

## III. Law and Analysis

### A. Rule 12(b)(1) Standard

A party may raise the defense of lack of subject matter jurisdiction via a Rule 12(b)(1) motion to dismiss. *See* Fed. R. Civ. P. 12(b)(1). "Under Rule 12(b)(1), a claim is 'properly

dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate' the claim." *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 668 F.3d 281, 286 (5th Cir. 2012) (quoting *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)); *accord Griener v. United States*, 900 F.3d 700, 703 (5th Cir. 2018).

"The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam) (citing *McDaniel v. United States*, 899 F. Supp. 305, 307 (E.D. Tex. 1995)). "Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Id.* (citing *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)). But "[a] motion under 12(b)(1) should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief." *Home Builders Ass'n of Miss.*, 143 F.3d at 1010.

There are two types of Rule 12(b)(1) challenges to subject matter jurisdiction: "facial attacks" and "factual attacks." *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). "A facial attack consists of a Rule 12(b)(1) motion unaccompanied by supporting evidence that challenges the court's jurisdiction based solely on the pleadings." *Harmouche v. Consulate Gen. of State of Qatar*, 313 F. Supp. 3d 815, 819 (S.D. Tex. 2018) (citing *Paterson*, 644 F.2d at 523). In considering a facial attack, the court "is required merely to look to the sufficiency of the allegations in the complaint because they are presumed to be true." *Paterson*, 644 F.2d at 523. "If those jurisdictional allegations are sufficient the complaint stands." *Id.* "A factual attack challenges the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings—such as testimony and affidavits—may be considered." *Harmouche*, 313 F. Supp. 3d at 819 (citing *Paterson*, 644 F.2d at 523).

Accordingly, the district court "has the power to dismiss for lack of subject-matter jurisdiction on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Spriggs v. United States*, 132 F.4th 376, 379 (5th Cir. 2025).

**B. Applicable Laws and Regulations**

***1. The Federal Tort Claims Act***

"The United States enjoys sovereign immunity from suit, meaning [that] it cannot be sued without consent." *Gonzalez v. United States*, 851 F.3d 538, 543 (5th Cir. 2017) (citing *United States v. Navajo Nation*, 537 U.S. 488, 502 (2003)). "The FTCA waives sovereign immunity and permits suit against the United States for claims sounding in state tort law for money damages." *Cantu Silva v. United States*, 110 F.4th 782, 787 (5th Cir. 2024) (quoting *Spotts*, 613 F.3d at 567). Trial courts have jurisdiction over "monetary claims against the Government for the negligent or wrongful acts of its employees 'where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.'" *Id.* (quoting 28 U.S.C. § 1346(b)(1)). The discretionary function exception, however, preserves sovereign immunity if a plaintiff's claims are "based on an act by a government employee that falls within the employee's discretionary authority." *Id.* (citing 28 U.S.C. § 2680(a)).

Courts utilize the two-part *Gaubert* test to determine whether this exception applies to a federal employee's actions. *See Gaubert*, 499 U.S. at 322–23. The Court first considers whether the conduct at issue is "discretionary in nature" and involves "an element of judgment or choice." *Cantu Silva*, 110 F.4th at 787 (quoting *Gaubert*, 499 U.S. at 322). If a federal statute, regulation, or policy "leaves it to a federal agency or employee to determine when and how to take action,"

then the "exercise of . . . authority is discretionary." *Freeman v. United States*, 556 F.3d 326, 337 (5th Cir. 2009) (citing *Gaubert*, 499 U.S. at 329).

Then, the Court "determines whether the judgment is 'of the kind that the discretionary function exception was designed to shield.'" *Cantu Silva*, 110 F.4th at 787 (quoting *Gaubert*, 499 U.S. at 322–23). The exception was designed to protect "only governmental actions and decisions based on considerations of public policy." *Spotts*, 613 F.3d at 568 (quoting *Gaubert*, 499 U.S. at 323). "[I]f a regulation allows the employee discretion, the very existence of the regulation creates a strong presumption that a discretionary act authorized by the regulation involves consideration of the same policies which led to the promulgation of the regulations." *Cantu Silva*, 110 F.4th at 787–88 (quoting *Gaubert*, 499 U.S. at 324). The exception applies only if both prongs are met. *Id.* at 788 (citing *Gonzalez*, 851 F.3d at 544). "The plaintiff carries the burden of establishing that the discretionary function exception does not apply." *Id.* (citing *Spotts*, 613 F.3d at 568).

"Waivers of sovereign immunity should be narrowly construed in favor of the United States." *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 668 F.3d at 287 (citing *In re Supreme Beef Processors, Inc.*, 468 F.3d 248, 253 (5th Cir. 2006)). "[W]hether the government has waived its sovereign immunity goes to the court's subject matter jurisdiction." *Campos v. United States*, 888 F.3d 724, 730 (5th Cir. 2018) (quoting *Tsolmon v. United States*, 841 F.3d 378, 382 (5th Cir. 2016)). If the discretionary function exception applies, then "a plaintiff's FTCA claim is barred, and a federal court is without subject matter jurisdiction over the claim." *Id.* (citing *Castro v. United States*, 608 F.3d 266, 268 (5th Cir. 2010) (en banc)).

***2. The Animal Welfare Act and Regulations***

To enforce the AWA, the Secretary of Agriculture "shall make such investigations or inspections as he deems necessary to determine whether any" regulated party has violated or is

violating the AWA or any regulation or standard issued thereunder. 7 U.S.C. § 2146(a). "APHIS regulations establish an inspection regime under which dealers are periodically visited by inspectors who assess compliance and prepare reports with their findings." *American Soc'y for Prevention of Cruelty to Animals v. Animal & Plant Health Inspection Serv.*, 812 F. Supp. 3d 18, 24 (D.D.C. 2025) (citing 9 C.F.R. Subch. A, Part 2).

The Secretary shall also "promulgate such rules and regulations as he deems necessary to permit inspectors to confiscate or destroy in a humane manner any animal found to be suffering as a result of a failure to comply with any provision of [the AWA] or any regulation or standard issued thereunder." 7 U.S.C. § 2146(a). "The Secretary created an enforcement regulation allowing for the confiscation of animals by APHIS agents." *Knaust v. Digesualdo*, 589 F. App'x 698, 700 (5th Cir. 2014) (citing 9 C.F.R. § 2.129). This regulation dictates that if an APHIS official finds that an animal being held by a regulated party is suffering due to the regulated party's failure to comply with any provision of the AWR, the official "shall make a reasonable effort to notify" the party and "request that the condition be corrected and that adequate care be given to alleviate the animal's suffering or distress, or that the animal(s) be destroyed by euthanasia." 9 C.F.R. § 2.129(a). If the regulated party "refuses to comply with this request, the APHIS official may confiscate the animal(s) for care, treatment, or disposal" if "the circumstances indicate the animal's health is in danger." *Id. See Animal League Def. Fund v. Rollins*, No. 22-3146, 2025 WL 2996190, at *2 (D.D.C. Oct. 24, 2025) (stating Section 2.129(a) "require[s] that regulated parties be given an opportunity to correct conditions causing animal suffering before an animal is confiscated"). The Government may place confiscated animals with "other licensees or registrants" through sale or donation. 9 C.F.R. § 2.129(c)(1).

### C. Analysis

The *Complaint* alleges the Government's confiscation of Brazos amounts to negligence, gross negligence, and conversion. (Doc. 1 at ¶¶ 31–45.) The *MTD* argues the discretionary function exception applies to these claims and that the Court, therefore, lacks jurisdiction over Plaintiff's lawsuit. (Doc. 17.)[3] Plaintiff bears the burden of establishing that the discretionary function exception is inapplicable and that the Court has jurisdiction. "[T]he discretionary function exception does not apply if the challenged actions in fact violated a federal statute, regulation, or policy." *Spotts*, 613 F.3d at 567 (citing *Gaubert*, 499 U.S. at 324; *Berkovitz*, 486 U.S. at 547).

***1.* Gaubert *Prong 1: Discretionary in Nature***

As to the first *Gaubert* prong, Defendant argues Plaintiff cannot point to a mandatory directive that APHIS's inspectors violated because their actions related to the inspections and the confiscation of Brazos were discretionary acts allowed by the AWA. Plaintiff, however, argues the inspectors did not have discretion to confiscate Brazos because they failed to follow the mandatory procedures set out in the AWA, the AWR, and the Guide when they denied Plaintiff an opportunity to comply with the September 12, 2023, report. Plaintiff also claims that because all violations were later removed in the amended report, "no violations existed" on September 12, 2023, and Inspector Digesualdo had no discretion to confiscate Brazos.

Though the *Opposition* focuses on the September 12 inspection and report as though they were the only inspection and report to occur, the *Complaint* and its attachments allege that inspections and corresponding reports also occurred on September 6 and September 11. A review of the amended reports and the allegations in the *Complaint* undermine Plaintiff's arguments.

[3] The *MTD* also argues the *Complaint* alleges claims for defamation, unconstitutional search and seizure, and a Takings Clause violation. (Doc. 17.) After reviewing the *Complaint* and Plaintiff's arguments in the *Opposition* (Doc. 20 at 16–17), the Court finds Plaintiff intended for the *Complaint* to raise only claims for negligence, gross negligence, and conversion. Plaintiff has not pled causes of action for defamation, unconstitutional search and seizure, or a Takings Clause violation.

First, Plaintiff argues 9 C.F.R. § 2.129(a) did not authorize the Government to confiscate Brazos because Plaintiff did not refuse to comply with the September 12 report.[4] (Doc. 20 at 12–13.) Though § 2.129(a) requires a refusal to correct noncompliance before confiscation may occur, the *Complaint* and its attachments indicate that such a refusal occurred after the September 6 report was issued. The September 6 report stated Brazos was emaciated due to Plaintiff's failure to follow the directions from the attending veterinarian. The report indicated these issues were in direct noncompliance[5] with 9 C.F.R. § 2.40(a)(2). (Doc. 1-5 at 1.) In accordance with § 8.4.1(4) of the Guide, this report designated September 8, 2023, as the deadline to correct the noncompliance. (*See* Doc. 17-2 at 283 § 8.4.1(4).) Plaintiff failed to comply with this deadline, as indicated by the September 11 report's citation for repeat noncompliance with § 2.40(a)(2).[6] (Doc. 1-6 at 1.) Plaintiff has not pointed to any source requiring the Government to wait for a new refusal after each repeated finding of suffering. In fact, the Guide, which Plaintiff claims binds the Government (Doc. 20 at 14), specifically instructs, "Do not include correction dates for Repeat NCIs." (Doc. 17-2 at 18 § 2.4.3.) Therefore, the Government's decision to confiscate Brazos did not violate nondiscretionary duties imposed by § 2.129(a). The Government provided Plaintiff with a compliance deadline, as required by § 2.129(a), and Plaintiff's failure to comply gave the Government discretion under § 2.129(a) to confiscate Brazos.[7]

---

[4] Plaintiff acknowledges that if it refused to comply, APHIS would have discretion to confiscate Brazos. (Doc. 20 at 9.)

[5] The Guide states, "A 'Direct' noncompliance is a Critical noncompliance that is **currently (at the time of the inspection) having a serious or severe adverse** effect on the health and well-being of the animal." (Doc. 17-2 at 20 § 2.4.6) (emphasis in original).

[6] Section 2.4.3 of the Guide instructs that a noncompliance "cited in the same section and subsection on the last inspection" is designated as a "Repeat NCI" (noncompliant item). (Doc. 17-2 at 18 § 2.4.3.)

[7] Because 9 C.F.R. § 2.129(a) allows inspectors to confiscate animals after a failure to comply with a compliance deadline, the Government had discretion to confiscate Brazos after the repeat noncompliance was noted on September 11. Because the discretion already existed on September 11, the Court finds unavailing Plaintiff's argument that the subsequent amendment of the September 12 report retroactively deprived the inspectors of discretion to confiscate Brazos. (Doc. 20 at 13.)

Second, Plaintiff argues the Government violated § 8.4.1 of the Guide because the September 12 report did not provide a deadline to correct the violation of § 2.40(a)(2). (Doc. 20 at 13–14.) The Guide, however, instructed the Government not to give a correction date for repeat noncompliant items. According to the Guide, the violations of § 2.40(a)(2) noted in both the September 11 and September 12 reports were considered repeat noncompliant items because they noted violations of the same section and subsection in three consecutive reports (September 6, 11, and 12). (*See* Doc. 17-2 at 18 § 2.4.3 (defining repeat noncompliant item).) Because both the September 11 and September 12 reports' citations for noncompliance with § 2.40(a)(2) were repeat noncompliant items, the Guide makes it clear that Plaintiff was not entitled to additional correction dates beyond the original September 8, 2023, deadline. (*See* Doc. 17-2 at 18 § 2.4.3.) Therefore, given the repeated noncompliance with § 2.40(a)(2), the Government did not violate § 8.4.1 when it confiscated Brazos, and Plaintiff failed to show the Government's conduct was not discretionary in nature.[8]

Accordingly, Plaintiff failed to carry its burden, and the first prong is satisfied. The decision to seize Brazos was discretionary in nature.

### *2.* **Gaubert** ***Prong 2: Considerations of Public Policy***

As to the second prong, the judgment was based on considerations of public policy and therefore was the kind of decision that the discretionary function exception was designed to shield. As discussed above, the AWA and the AWR afford APHIS agents with discretion to make such decisions. Accordingly, there exists "a strong presumption" that confiscating Brazos involved

[8] The *Opposition* also argues the Government did not comply with § 8.4.1 because (1) it did not give a compliance deadline for the September 12 report's citation for a violation of § 2.131(a), and (2) it confiscated Brazos before the September 15, 2023, compliance deadline for Plaintiff's § 2.40(a)(1) violation. (Doc. 20 at 14.) The Court need not rule on this argument because as explained in the preceding analysis, the repeated noncompliance with § 2.40(a)(2) provided the Government with discretion to confiscate Brazos, and § 8.4.1 was not violated in exercising this discretion.

consideration of the same policies that led to the promulgation of the applicable regulations. *Cantu Silva*, 110 F.4th at 787–88 (quoting *Gaubert*, 499 U.S. at 324).

Defendant argues the inspectors' decisions in this case were made in furtherance of the AWA's policy to ensure that covered animals are treated humanely and thus, that they "must be presumed" to be grounded in policy. "Plaintiff recognizes that the AWA and the AWR allow the Government to confiscate animals under certain circumstances and that such a decision is grounded in policy considerations." (Doc. 20 at 14.) Plaintiff, however, again insists the inspectors removed Brazos before Plaintiff refused to comply with the Government's conditions and argues the Government was acting outside the bounds of the AWR. (*Id.* at 15.) Plaintiff concludes that the confiscation did not "further or support the Government's goal concerning animal safety" (*id.*) and that the confiscation decision "was neither grounded in policy nor susceptible to policy analysis where mandatory steps were not followed." (*Id.* at 16.)

As discussed in the analysis of the first prong, the Government followed the mandatory steps and provided Plaintiff with time to fix its noncompliance issues. Because Plaintiff makes no other arguments regarding the second prong, Plaintiff fails to carry its burden, and the second prong is satisfied. Both prongs of the two-part *Gaubert* test, therefore, are met, and the discretionary function exception applies. *See Gaubert*, 499 U.S. at 322–23. Accordingly, the discretionary function exception precludes subject matter jurisdiction over Plaintiff's FTCA claims, and those claims must be dismissed for lack of jurisdiction.

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that *The United States of America's Motion to Dismiss Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure* (Doc. 17) filed by Defendant United States of

America is **GRANTED** as to lack of subject matter jurisdiction. Plaintiff Barn Hill Preserve Inc.'s claims against Defendant United States of America are **DISMISSED WIHTOUT PREJUDICE**.

Signed in Baton Rouge, Louisiana, on September 29, 2026.

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**